In re Lonnie Ray BAGWELL, DBA P & L Distributors Shake & Cedar Products; L.B. Shake Co.; Little L.B. Mill and Phyllis Lorene Bagwell, Debtors.

Paul LANSDOWNE, Trustee, Plaintiff,

v.

The OREGON BANK, Defendant.

Bankruptcy No. 680–06277.
Adv. No. 682–7103.

United States Bankruptcy Court,
D. Oregon.

March 30, 1983.

James Caher, Eugene, Or., for plaintiff.

Gilbert Sussman, Portland, Or., for defendant.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Plaintiff-trustee seeks to recover payments made by the debtor to The Oregon Bank (Bank) totalling $61,340.17 as voidable preferences under 11 U.S.C. Section 547. The Bank, relying on 11 U.S.C. Section 547(c)(2) and (4) has moved for summary judgment. At a hearing on the Bank's motion the parties agreed that no genuine issue as to any material fact existed and agreed to submit the matter by providing additional memoranda. All memoranda are now received and the record reveals the following facts.

The debtor herein purchased goods from S and J Cedar Products, aka Veneta Cedar Products, Inc. (Veneta). The Bank and Veneta had a financing arrangement which was described in an affidavit of the Bank's branch manager Carolyn Nading as follows:

"Veneta Cedar Products, Inc. ('Veneta'), formerly operated under the assumed business name of S & J Cedar Products, was, and for some time prior to the events hereinafter referred to had been, a customer of the Bank.

The Bank had made both a term loan and an operating loan to Veneta. The balance owing on the operating loan on April 1, 1980, when bankruptcy No. 680–06277, entitled 'In re Lonnie Ray Bagwell, dba P & L Distributors Shake & Cedar Products, L.B. Shake Co. and Little L.B. Mill, and Phyllis Lorene Bagwell, Debtors', was commenced was $50,115.00.

The arrangements between Veneta and the Bank provided for the making of advances by the Bank to Veneta against invoices covering materials and lumber products sold by Veneta to the Debtor. Each such invoice was assigned by Veneta to the Bank, a stamped assignment being imprinted upon the invoice which directed that the payment of the invoice be made directly to the Bank.

Upon the receipt by the Bank of payment of a particular invoice, the amount received was credited first against the advance against the particular invoice, and the balance, if any, credited to Veneta's bank account. At all times hereinafter mentioned, the indebtedness of Veneta to the Bank exceeded any amount received by it on any particular invoice in excess of the advance against that invoice."

Veneta sold goods to the debtor covered by the invoices set out in the following chart, against which the Bank made advances, on the dates and for the amounts indicated. Payments made by the debtor to the Bank are listed with dates and payment amounts indicated.

| Invoice Number | Invoice Amount | Invoice Date | Amount of Payment to Bank | Payment Date |
|---|---|---|---|---|
| 1185 | $29,917.44 | 12/03/79 | $ 29,917.44 | 1/23/80 |
| 1192 | 18,082.18 | 12/19/79 | 18,082.18 | 2/04/80 |
| 1197 | 432.77 | 12/27/79 | 432.77 | 2/13/80 |
| 1199 | 11,966.98 | 1/02/80 | 11,966.98 | 2/13/80 |
| 1203 | 940.80 | 1/08/80 | 940.80 | 2/13/80 |
| 1205 | 2,690.69 | 1/29/80 | –0– | – |
| 1207 | 10,969.73 | 2/05/80 | –0– | – |
| 1208 | 6,980.74 | 2/05/80 | –0– | – |
| 1209 | 20,942.21 | 2/08/80 | –0– | – |
| 1210 | 6,980.74 | 2/11/80 | –0– | – |
| 1214 | 4,918.03 | 2/18/80 | –0– | – |

The debtors filed their voluntary Chapter 7 petition April 1, 1980. The total amount of payments by debtors to Bank which the trustee seeks to recover is $61,340.17. The sum of unpaid invoices representing goods shipped subsequent to payments which the trustee seeks to recover is $53,482.14.

The Bank contends that the payments received on Invoices Nos. 1199 and 1203 which total $12,907.78 were not voidable by the trustee on the basis of 11 U.S.C. Section 547(c)(2) because payment was made within 45 days after the invoice dates. The Bank further contends that the goods shipped to the debtors represented by Invoices Nos. 1205, 1207, 1208, 1209, 1210 and 1214 constitute "new value" as defined in Section 547(a)(2) of the Code and more than offset the aggregate amount of the three invoices paid more than 45 days after their dates under Section 547(c)(4) of the Code.

The trustee contends that the assignments of the accounts to the Bank by Veneta were absolute and that the Bank thereby became the owner of the indebtedness represented by the invoices putting the Bank in the position of an unsecured creditor of the debtors which received payments on antecedent debts totalling $61,340.17 during the 90 days preceding the order for relief in the debtors' bankruptcy. The trustee further contends that the debts were incurred by the debtors through the purchase of cedar products and thus not incurred in the ordinary course of business of the Bank as required by Section 547(c)(2) of the Code. As to the Bank's Section 547(c)(4) contention, the trustee asserts that the Bank, as the creditor receiving the alleged preferen-

tial payments, never supplied any new value to or for the benefit of the debtor and consequently is not aided by Section 547(c)(4).

The parties frame the basic issue for the Court's resolution as characterization of the relationship between the Bank and the debtors, i.e. whether the Bank, as assignee, owned the accounts and received payments for its own benefit, or whether Veneta was the creditor of the debtor and the Bank received payments for Veneta's benefit, as the accounts comprised collateral security for the Bank's loans to Veneta or whether under the Bankruptcy Code the Bank, as transferee, was entitled to defenses which would be available to the assignor.

The trustee urges technical interpretation of the language of the Bankruptcy Code coupled with a misplaced reliance on the notice of assignment stamped on each invoice assigned to the Bank in urging the Court to deprive the Bank of the Code's exceptions to preferential transfer avoidability which would be applicable to its assignor, Veneta. The language of the Code as applied to the facts of this case is troublesome, but no reasonable basis has been offered or appears to exist to deprive the assignee-transferee the defenses which would be available to the debtors' true creditor-assignor.

The trustee's contention that the legend stamped on the individual invoices assigned amounted to an absolute assignment and sale of the accounts they represented misplaces emphasis on the language of what is basically only a notice of the assignment to the account debtor Bagwell.

O.R.S. 80.010 provides:

"80.010 Assignment of chose in action; payment by debtor without notice. Any bona fide assignment of a chose in action by way of sale or pledge made in writing for a good, valuable and adequate consideration is deemed completed at the time the writing is executed by the assignor and takes effect at the time of execution according to the terms of the writing without the giving of notice to

the debtor therein mentioned unless such notice is required by statute; but if notice is not given to a debtor, and such debtor, without knowledge of the assignment pays or discharges in whole or in part his obligation to the assignor or to any subsequent assignee of the chose in action who has given notice, such payment constitutes a discharge of the debtor to the extent thereof without prejudice to any right or remedy between the several assignees."

The document creating the assignment of accounts from Veneta to the Bank is the security agreement between the parties which provides in relevant part:

"In consideration of an extension of credit by THE OREGON BANK, an Oregon Banking Corporation (secured party, hereinafter called 'Bank'), to Veneta Cedar Products, Inc. (hereinafter called 'Debtor'), and as security for payment of all sums due or to become due or owing by Debtor to Bank, including: All promissory notes outstanding under a $50,-000.00 line of credit. Debtor hereby grants, transfers and assigns to Bank a lien upon and security interest in the following property (hereinafter called 'Collateral'):

. . . . .

2. In all of Debtor's accounts, chattel paper, documents, Instruments and general intangibles, now existing or hereafter arising, and in all proceeds thereof; and

. . . . .

11. That Debtor does hereby designate and appoint Bank, its successors and assigns, its true and lawful agent and attorney, with powers irrevocable, for it and in its name, place and stead, to ask, demand, receive, receipt and give acquittance for any and all amounts which may be or become due by any other party in connection with any of said Collateral, and at its option to file any claim or take any action or proceeding, either in its own name, or in the name of Debtor, or otherwise, which to Bank or any successor assignee thereof may seem necessary

or desirable in order to collect or enforce payment of any and all amounts which may become due or owing on account of any of said collateral and to perform any of Debtor's duties and obligations in connection with any of said Collateral, in order to prevent the default of Debtor in connection therewith. The acceptance of this assignment by Bank shall not obligate it to perform any duty, covenant or obligation required to be performed by Debtor in connection with any of said Collateral.

. . . . .

13. That this Security Agreement shall not be qualified or supplemented by course of dealing. No waiver or modification by Bank of any of the terms and conditions hereof shall be effective unless in writing signed by Bank. No waiver or indulgence by Bank as to any subsequent required performance or other obligations of Debtor hereunder."

The terms of the assignment reflect, not a purchase of accounts but an assignment for collateral security and provision for collection. The Bank, as secured creditor of Veneta, has the rights granted to it in the security instrument. Payments made by the debtor to the Bank pursuant to the assignment were applied to reduce Veneta's indebtedness to the Bank and are for the benefit of Veneta. Existence of security between the Bank and Veneta is not to confuse the fact that no security existed against the debtor-transferor.

The trustee's restrictive interpretation of Section 547(c)(2) and (4) of the Code appears to have no support in the legislative history or case law. On the contrary, the policies underlying the exceptions are furthered by construction allowing the Bank to avail itself of the exceptions. Section 547(c)(4) is intended to promote fairness among preferred unsecured creditors and to encourage new extensions of unsecured credit to financially shaky debtors. With regard to Section 547(c)(2) the legislative history states:

"The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong. 1st Sess. 373 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6329. (Hereinafter referred to as House Report)

These exceptions are part of the Bankruptcy Code's substantial modification of the treatment of preferences under the old Bankruptcy Act of 1898 intended to modernize the preference provisions and bring them more into conformity with commercial practice and the Uniform Commercial Code. House Report, supra, at page 372, U.S.Code Cong. & Admin.News 1978, p. 6328.

■ The method of invoice financing utilized by Veneta and the Bank is a usual and integral part of commercial practice within the lumber industry. As a court of equity, this Court cannot equitably interpret the Code to deny the assignee Bank the right to stand in the shoes of its assignor Veneta for purposes of Section 547(c)(2) and (4). See, *In re Church Buildings and Interiors, Inc.*, 14 B.R. 128 (Bkrtcy.W.D.Okl.1981).

■ Consequently, based on the record before the Court, the payments the trustee seeks to recover from the Bank are not avoidable as preferences pursuant to 11 U.S.C. Section 547(c). Payments made on Invoices Nos. 1199 and 1203 were made within 45 days of delivery of the goods and otherwise satisfy the requirements of Section 547(c)(8) and the delivery of goods represented by Invoices Nos. 1205, 1207, 1208, 1209, 1210 and 1214 shipped to the debtor subsequent to the alleged preferential payments constitute new value for purposes of Section 547(c)(4) the aggregate value of which more than offsets the amount of payments sought by the trustee which were not within the ambit of Section 547(c)(2). The trustee's complaint is denied. Separate Judgment for the Bank consistent herewith shall be entered with each party to bear his or its own costs and attorney fees in these proceedings. Pursuant to Bankruptcy Rule 752 this Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and they will not be separately stated.